**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JOSE D. IRAHETA,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:21-cv-00104-TES** |
| **HOUSTON COUNTY,** *et al.,* | |
| *Defendants.* | |

**ORDER GRANTING MOTIONS TO DISMISS**

Before the Court is the Motion to Dismiss filed by Defendants Houston County

and Sheriff Cullen Talton [Doc. 44], and the Motion to Dismiss filed by Defendants

Charles Goodling and Vince Howell [Doc. 59]. As detailed below, the Court **GRANTS**

these two Motions to Dismiss and dismisses Plaintiff's claims against these defendants

in their entirety.

**FACTUAL BACKGROUND**

The following facts arise from Plaintiff's Second Amended Complaint. [Doc. 24].

Unless otherwise noted, the Court has assumed them to be true for the purpose of

ruling on Defendants' Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Deputy Brett C. Sanders, a deputy with the Houston County Sheriff's

Department, arrested Plaintiff at approximately 2:54 p.m. on Monday, August 22, 2016,

on an outstanding bench warrant while effecting a routine traffic stop. [Doc. 24, ¶ 77].

At the time of his arrest, Plaintiff suffered from "acute respiratory infections, such as an

acute bronchitis" which resulted in "severe cough, chest pain, high temperatures, and

severe congestion." [*Id.*]. After being arrested, Plaintiff notified Deputy Sanders that he

was ill and taking four medications and requested that he be allowed to transport his

medication to the Houston County Sheriff's Office ("HCSO"), and Deputy Sanders

allowed him to do so. [*Id.*]. Plaintiff was then taken to a HCSO holding facility to await

transportation to the Houston County Detention Center ("HCDC"). [*Id.* at ¶ 78]. While

at the holding facility, Plaintiff requested to take his medications, but was denied and

told he could not take them until the medical personnel processed him at the HCDC.

[*Id.*].

After being transported to the HCDC, jail personnel told Plaintiff to wait until he

could be processed by Intake. [*Id.* at ¶ 79]. While waiting to be processed, Plaintiff's

upper respiratory symptoms gradually worsened. [*Id.*]. Defendant Howell processed

Plaintiff in Intake at approximately 8:30 p.m., when he ordered Plaintiff to turn in all of

his personal clothing and belongings, including his prescription eyeglasses. [*Id.* at ¶ 72].

Despite objecting and explaining his need for his glasses, Plaintiff turned them over to

Defendant Howell. [*Id.* at ¶80]. At approximately 9:30 p.m., medical personnel at the

Medical Ward/Nurse's Station processed Plaintiff. [*Id.* at ¶ 81].  Plaintiff advised

medical personnel of his respiratory infection, the medications that he had been

prescribed, and requested that he be allowed to take them. [*Id.* at ¶ 81]. Medical

personnel told Plaintiff that he would not be allowed to take his medicine until they

were verified. [*Id.*]. Plaintiff requested pain medication and cough suppressant from the

medical personnel while his medications were being verified, but medical personnel did

not give him any. [*Id.*].

Following processing at the Medical Ward/Nurse's Station, deputies took

Plaintiff to his cell for the evening. [*Id.* at ¶ 82]. During the night, Plaintiff awoke with a

"severe cough episode" accompanied by difficulty breathing and chest pain. [*Id.*].

Plaintiff attempted to call for help, was unsuccessful, lost consciousness, and later

awoke on the floor. [*Id.*]. The next day Plaintiff continued to experience symptoms from

his illness. [*Id.* at ¶ 83]. Sometime after 9:00 a.m., Plaintiff met with his attorney, Mr.

Lawson, in the HCDC visitor center. [*Id.*]. At approximately noon, Plaintiff received

notice that his medications had been verified and he would be receiving them during

"pill call." [*Id.* at ¶ 85]. Later that afternoon Plaintiff attempted to contact his attorney,

but Defendant Goodling denied his request and then escorted Plaintiff back to his cell.

[*Id.* at ¶ 66].

At 5:30 p.m., prison personnel notified Plaintiff that he would be released

shortly, and because of his impending release, he would receive his medications when

he left the jail. *See* [*id.* at ¶ 86]. At 6:40 p.m., the HCDC released Plaintiff with his

medications, and he immediately took them. [*Id.* at ¶ 87]. Following his release, Plaintiff

sought medical treatment and received two additional medications. [*Id.*].

On August 23, 2016, Plaintiff "provided a hand-written notice . . . of suit and

notice to preserve records and evidence to a Supervisor Correction Officer . . . at the

HCDC." [*Id.* at ¶ 125]. Then, on February 27, 2017, Plaintiff provided written notice to

Defendants stating that he contemplated litigation at that time and that Defendants

should preserve records, documents and evidence related to his contemplated

litigation. [*Id.*].

## DISCUSSION

### A. Legal Standard

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), district

courts must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 556.

A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted

as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907

F.3d 1324 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). This rule

"'does not impose a probability requirement at the pleading stage,' but instead 'simply

calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir.

2007) (quoting *Twombly*, 550 U.S. at 556). Pleadings filed by pro se plaintiffs "are held to

a less stringent standard than pleadings drafted by attorneys and will, therefore, be

4

liberally construed." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003)).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds* by *Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). In this regard, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B. Defendants' Motions to Dismiss

Before the Court is the Motion to Dismiss filed by Defendants Sheriff Talton and Houston County [Doc. 44] and the Motion to Dismiss filed by Defendants Howell and Goodling [Doc. 59]. Both Motions to Dismiss ask the Court to dismiss all of Plaintiff's claims against them in their entirety. Because Plaintiff's Second Amended Complaint, filed pro se, is often difficult to follow, the Court will identify each federal claim Plaintiff makes against these four Defendants.

Plaintiff's primary claim is brought pursuant to 42 U.S.C. § 1983 for a violation of his rights under the Eighth Amendment for deliberate indifference to his serious medical needs by denying him his medication. *See* [Doc. 24, ¶¶ 75–124]. Plaintiff brings this claim against Defendants Houston County and Talton.[1] While Plaintiff alleges Defendants violated his Eighth Amendment rights, as a pretrial detainee, his claims of deliberate indifference are actually governed by an identical standard under the Fourteenth Amendment. *See Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 (11th Cir. 2020) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Accordingly, the Court refers to the Fourteenth Amendment in this order as opposed to the Eighth Amendment. Plaintiff brings this claim against Sheriff Talton in both his individual and official capacities.

Second, Plaintiff brings a separate § 1983 claim for a violation of his rights under the Fourteenth Amendment for the deprivation of his eyeglasses against Defendants Talton and Howell. These claims are brought against each Defendant in both their

---

[1] There seems to be some confusion over whether Plaintiff brings this claim of deliberate indifference against Defendant Goodling, who was previously identified as John Doe 3. In his Motion to Dismiss, Defendant Goodling addresses Plaintiff's claim as if it were brought against him. [Doc. 59, p. 7] Indeed, the Court understands why Defendant Goodling did so because the claim is brought against the "Medical Defendants," which, as defined by Plaintiff, includes John Does 1 through 10. [Doc. 24, ¶ 75]. However, after a reading of the entirety of Plaintiff's Second Amended Complaint, the Court determines that he did not bring a claim of deliberate indifference against Defendant Goodling. It seems Plaintiff inadvertently included Defendant Goodling in his definition, as he refers to defendants "JD1, JD2, JD4 thru 10" 18 separate times as the defendants responsible for the alleged deliberate indifference to his serious medical needs. *See* [Doc. 24, ¶¶ 94, 95, 98, 99, 104, 105, 109, 112, 145, 162, 163, 166, 167, 172, 173, 177, 242, 244]. Alternatively, if Plaintiff intended to bring this claim against Defendant Goodling, the Court finds that it does not comply with Federal Rule of Civil Procedure 8 because Plaintiff did not allege *any* facts relating to Defendant Goodling with respect to his Eighth Amendment Claim.

individual and official capacities. Because the relevant legal standard is the same, the Court analyzes these claims together.

Third, Plaintiff brings a § 1983 action for violation of his right to equal protection under the 14th Amendment by refusing him access to the telephone against Defendant Goodling. Plaintiff appears to make this claim against Defendant Goodling in both his individual and official capacities. The Court will consider this official capacity claim along with the official capacity claims brought against Defendants Talton and Howell as the same standard governs each claim.

Fourth, Plaintiff brings claims under Title II of the ADA and Section 504 of the RA against Defendants Houston County, Talton, and Howell for depriving him of his eyeglasses.

Fifth, Plaintiff brings a claim of conspiracy under § 1983 against Defendants Houston County and Sheriff Talton.

Last, Plaintiff brings claims for injunctive and declaratory relief relating to the above-mentioned claims.[2]

## 1.    Section 1983 Claim for Deliberate Indifference Against Houston County

Plaintiff brings a claim pursuant to § 1983 for deliberate indifference in violation of his rights under the 14th Amendment against Defendant Houston County under two theories. His first theory alleges the "policies, practices, customs, and regulations" of

---

[2] Plaintiff also brings a myriad of state law claims.

the County resulted in his injury. [Doc. 24, ¶ 5]. The second theory alleges the County caused him harm through its "hiring, training, supervising, and disciplining of" its employees. [Doc. 24, ¶ 5]. The Court construes this second allegation as a "failure-to-train" claim. Plaintiff failed to adequately plead requisite facts for either of his § 1983 claims brought against Defendant Houston County, and, as such, the claims are dismissed.

While municipalities are considered "persons" for purposes of § 1983, they "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Municipalities may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as entity is responsible under § 1983." *Id.* at 694. There are limited circumstances in which a municipality may be held liable under § 1983 for a "failure to train" its employees. *See City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Harris*, 489 U.S. at 389.

8

Plaintiff alleges that Defendant Houston County had a policy of "act[ing] improperly for its own financial reasons in deliberate indifference to [his] needs." [Doc. 24, ¶ 5]. Plaintiff further alleges that this policy "[was] a moving force in the constitutional and statutory violations set out" in his Second Amended Complaint. [Doc. 24, ¶ 5]. Furthermore, Plaintiff makes another claim that "the County, was also responsible for the hiring, training, supervising, and disciplining of agents, employees, and correction officers of the County." [Doc. 24, ¶ 5]. The Court construes this claim to be a failure-to-train claim, and that Defendant Houston County's alleged failure to adequately train its subordinates resulted in constitutional injury. While it may seem that the Court has two different inquiries, it really only needs to answer one question: whether, under Georgia law, a sheriff acts as an arm of the state or county when providing medical care for individuals in his custody.

The proper test for determining whether an actor is an arm of the state or not was solidified by the Eleventh Circuit in *Lake v. Skelton*, 840 F.3d 1334 (11th Cir. 2016). As provided by the Eleventh Circuit, the test has two steps of inquiry. *See id.* at 1337. The first is to determine "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)). Next, courts determine whether the actor is an arm of the state "by considering four factors: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives

9

its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1338 (quoting *Manders*, 338 F.3d at 1309). After weighing all of the *Manders* factors, the Eleventh Circuit held that a sheriff acts as an arm of the state when providing inmates with food. *See id.* at 1339.

Following the same reasoning of *Lake*, this Court has previously found that sheriffs are state actors when providing medical care to inmates and detainees. *See Brooks v. Wilkinson County*, 393 F.Supp.3d 1147, 1160 (M.D. Ga. 2019) ("Thus, the Court finds that, under Georgia law, a sheriff acts as an arm of the state when he provides medical care to inmates in a county jail."); *see Palmer v. Correct Care Sols., LLC*, 291 F.Supp.3d 1357, 1362 (M.D. Ga. 2017) (holding that the Eleventh Circuit's holding and rationale in *Lake* leaves "no distinction . . . between a county sheriff feeding county detainees in a county jail and a county sheriff taking care of the medical needs of those same county detainees in that same county jail.").

Not only has this Court followed the *Lake* precedent, but both the Northern and Southern Districts of Georgia have as well. *See Estate of May by and through Myrick v. Fulton County*, 2020 WL 5541086, at *5 (N.D. Ga. Aug. 13, 2020) (adopting the reasoning from *Palmer* and holds that Sheriff acts as an arm of the state when providing inmates with medical care); *McRae v. Telfair County*, 2020 WL 5608637, at *6 (S.D. Ga. Sep. 18, 2020) ("This Court – without input from Plaintiff on the matter – finds Palmer and

Brooks persuasive."). It is clear that *Lake* settled the question and <u>definitively holds that</u> sheriffs are state actors when providing medical care to inmates and detainees.

Now that the Court has determined that providing medical care to inmates is a state (not a county) function, it can address Plaintiff's claims against Defendant Houston County. Because municipalities may only be liable for their policies, customs, or practices—or their deliberate indifference evidenced by widespread failure to train its subordinates—Defendant Houston County cannot be liable for the policies or practices of its sheriff when it comes to the provision of medical care to inmates. As aptly stated in its brief, "Houston County acknowledges that it has an obligation to pay for the medical treatment provided to inmates of the [HCDC] but that is where its responsibility ends." [Doc. 44, p. 3]. Defendant Sheriff Talton, as an arm of the state, is responsible for the policies relating to providing inmates with medical care. Accordingly, Plaintiff's § 1983 claim against Defendant Houston County fails as a matter of law.

### 2.    Section 1983 Claims Against Talton, Howell, and Goodling in Their Official Capacities

Plaintiff brings one § 1983 claim for deliberate indifference in violation of his rights under the 14th Amendment related to the deprivation of his glasses against both Defendant Talton and Howell in their official capacities. Plaintiff brings another § 1983 claim for deliberate indifference for denying medical care against Sheriff Talton in his official capacity. And, Plaintiff also brings a § 1983 claim for alleged violations of his

equal protection rights under the 14th Amendment against Defendant Goodling. Defendants argue that they are entitled to immunity under the Eleventh Amendment when sued in their official capacities because they are state actors. The Court agrees. In that same vein, when sued in their official capacities, none of the Defendants are "persons" subject to liability under § 1983.

"The Eleventh Amendment protects a state from an unconsented-to suit in federal court." *Brooks*, 393 F.Supp.3d at 1157 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued <u>and when an 'arm of the State' is sued</u>." *Manders*, 338 F.3d at 1308 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)) (emphasis added).

As detailed above, Defendant Talton is a state actor for purposes of providing medical care to inmates and detainees. And, under Eleventh Circuit precedent, so are sheriff's detention officers. *See Pelliterri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015) (quoting *Warren v. Walton*, 231 Ga. 495, 409 (1973) ("recognizing that 'deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge.")); *see also Odom v. Jasper County*, 2016 WL 1254358, at *5, n. 46 (M.D. Ga. Mar. 29, 2016) ("To the extent Plaintiffs bring claims against Defendant Wilks in his official capacity as a detention officer he is also entitled to Eleventh Amendment immunity because he is an employee of the Sheriff.") (quoting *Pelliterri*, 776 F.3d at 780).

12

Further, sheriffs "function as an arm of the State . . . when promulgating policies and procedures governing conditions of confinement" at county jails. *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1325 (11th Cir. 2005).

Because Defendant Talton is a state actor when providing medical care for inmates and detainees and when administering jail policies, so are Defendants Howell and Goodling in their official capacities as detention officers. Because these three Defendants are considered state actors, and the State of Georgia has not waived its immunity to suit, the Court finds that none of Plaintiff's claims against these Defendants in their official capacities are valid and dismisses each of them.

Alternatively, Plaintiff fails to state a valid claim under § 1983 because when sued in their official capacities, Defendants Talton, Howell, and Goodling are not "persons" subject to liability under the statute. Section 1983 limits suits to "persons" who deprive someone of their rights, privileges, or immunities secured by the Constitution. 42 U.S.C. § 1983. The Supreme Court of the United States has determined that despite state officials "literally" being persons, "a suit against a state official in [their] official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing to *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). The Supreme Court then went on to say that such a suit against a state official in their official capacity "is no different from a suit against the state itself." *Will*, 491 U.S. at 71 (citing to *Kentucky v. Graham*, 473 U.S. 159,

165–66 (1985); *Monell*, 436 U.S. at 690 n. 55). Accordingly, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. Because these three individuals are state actors when providing medical care to inmates and detainees, they cannot be liable under § 1983 and Plaintiff's claims against them in their official capacities cannot survive.

### 3.    Section 1983 Claim for Deliberate Indifference Against Defendant Talton and Howell in Their Individual Capacities

Plaintiff brings a § 1983 claim for violations of his rights under the Fourteenth Amendment for deliberate indifference to his need to wear glasses. Plaintiff brings this claim against both Defendant Talton and Howell in their individual capacities. *See* [Doc. 24, ¶¶ 80, 98].

For a pretrial detainee to prove deliberate indifference to provide medical treatment in violation of the Fourteenth Amendment, a plaintiff must satisfy three burdens: (1) show that they faced a substantial risk of serious harm; (2) the defendants acted deliberately indifferent towards that risk; and (3) causation. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)). "Stating [a Fourteenth] Amendment Claim of denial of adequate medical care requires satisfying both an objective and subjective component." *Gifford v. Rathman*, No. 1:14-CV-1179-SLB-JEO, 2017 WL 4340454, at *19 (N.D. Ala. Sept. 29, 2017) (citing *Hervy v. McDonough*, No. 5:07cv58/RS/EMT, 2007 WL 1482392, at *3–4 (N.D. Fla. May 18, 2007)). Supervisory officials are not liable under § 1983 for the

14

unconstitutional acts of their subordinates unless the supervisor personally participates in the conduct or a causal connection between the supervisor's conduct and the alleged wrongful conduct exists. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

Our law doesn't provide an exhaustive list of what constitutes a "serious medical need." In accordance with Eleventh Circuit precedent, "a serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In both scenarios, "the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Farrow*, 320 F.3d at 1243 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)).

Plaintiff's § 1983 claim against both defendants for deliberate indifference in violation of the Fourteenth Amendment fails to state a claim. First, the Court is not convinced that Plaintiff has adequately pled that he suffered a serious medical need. Plaintiff alleges that he has prescription glasses for farsightedness and nearsightedness and "the absence of [his] prescribed glasses would not only deprive him on [sic] the ability to see things clearly, but also induce headaches due to eye strains." [Doc. 24, ¶ 80]. Plaintiff handed over his glasses to Defendant Howell and John Doe 6 "after

objecting and explaining" his need for them. [*Id.*]. Despite his explanation, the risk that Plaintiff faced was not so serious to trigger the Fourteenth Amendment. At the most, Plaintiff's notice to prison officials raised concerns about the status of his eyesight but did not constitute a "serious medical need." *See Sutherland v. St. Lawrence*, 2007 WL 4553021, at *3 (S.D. Ga. 2007) ("Although Sutherland's reports of eye strain and headaches after reading undoubtedly raise concerns about the status of his eyesight, he has received two eye examinations and neither exam indicated a problem with his eyesight that merited prescription glasses.") Had Plaintiff been detained longer, then perhaps he would have required examination, but similar to Sutherland, Plaintiff's mere reports of eye strain do not constitute a serious medical need.

Second, Plaintiff fails to allege any actual injury resulting from Defendant Howell's actions. In order for a Fourteenth Amendment claim for deliberate indifference to stand, Plaintiff must allege that prison officials' actions caused injury. *See Goodman*, 718 F.3d at 1331. Despite Plaintiff's allegation that he "had an intense headache" the morning of his release from the HCDC, his Second Amended Complaint seems to tie this headache to his deprivation of medicine and not eye strain. [Doc. 24, ¶ 83]. Plaintiff fails to allege any facts that he experienced any eye strain or a resulting headache while detained at the HCDC. As such, Plaintiff has merely alleged that Defendant Howell's actions "could have," rather than "did," cause injury following the

turning over of his glasses. Consequently, Plaintiff fails to allege that Defendant Howell's alleged indifference actually caused injury, thus failing to state a claim.

Third, and solely with respect to Defendant Talton, Plaintiff failed to include *any* facts alleging Defendant Talton personally participated in or caused Plaintiff's glasses to be taken. Plaintiff's only contentions are that Sheriff Talton was responsible for the HCDC and thus should be held liable due to a pattern or policy of his subordinates "improper and illegal actions." *See* [Doc. 24, ¶ 123]. However, as explained above supervisory liability isn't available for § 1983 claims. Plaintiff's conclusory allegations that there were widespread abuses are insufficient to maintain his claim. As such, Plaintiff's Second Amended Complaint fails to state a valid claim against Sheriff Talton for violating the Fourteenth Amendment when Plaintiff's glasses were taken.

Accordingly, as explained above, the Court dismisses his claims for deliberate indifference to a serious medical need against Defendants Talton and Howell in their individual capacities.

### 4. Section 1983 Claim for Deliberate Indifference Against Defendant Talton in His Individual Capacity

Plaintiff also brings a separate § 1983 claim against Defendant Talton in his individual capacity for violations of his rights under the Fourteenth Amendment for deliberate indifference by depriving him of his medication. *See* [Doc. 24, ¶ 98]. As discussed below, Plaintiff fails to sufficiently plead this claim and the Court dismisses it.

As discussed above, plaintiffs must show (1) they faced a serious medical risk, (2) that defendants acted with deliberate indifference towards that risk, and (3) that defendants' deliberate actions caused injury. *See Goodman*, 718 F.3d at 1331. Furthermore, supervisors cannot normally be liable for the unconstitutional actions of their subordinates. *See Cottone*, 326 F.3d at 1360. "Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (citations omitted). A causal connection may be established through instances of widespread abuse that puts the supervisor on notice or when supervisors direct, or fail to stop, subordinates from acting unlawfully. *See Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003) (citations omitted).

Plaintiff fails to include any facts in his Second Amended Complaint that even suggest Defendant Talton personally participated in the denial of medical care to Plaintiff. Furthermore, Plaintiff fails to allege a causal connection—either through widespread abuses that would have put Defendant Talton on notice, or through Defendant Talton's direction or failure to act—that would subject him to supervisory liability under § 1983. As such, Plaintiff's claim alleges the exact type of supervisory liability not allowed by § 1983.

18

Even more fatal to Plaintiff's claim is the fact that the underlying conduct isn't a constitutional violation. In its previous order, the Court determined that Plaintiff's Second Amended Complaint failed to adequately plead a claim of deliberate indifference for denial of his medication. *See* [Doc. 60, pp. 15–16]. Because the actions of Southern Correctional Medicine and Carolyn Ingram did not violate the Constitution, even if Defendant Talton had personally participated, or was subject to supervisory liability, Plaintiff's claim against Defendant Talton for these actions still fails.

### 5. Section 1983 Claim for Violation of Plaintiff's Equal Protection Rights Against Defendant Goodling in His Individual Capacity

Plaintiff's sole claim against Defendant Goodling is a § 1983 claim for violating his equal protection rights under the 14th Amendment by denying him use of the telephone. This claim also doesn't survive the Court's inquiry. "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (quoting *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)). "Protected classes typically involve immutable characteristics determined by the accident of birth, such as race, national origin, and sex." *Martinez v. Warden*, 848 F. App'x 864, 867 (11th Cir. 2021).

Plaintiffs must satisfy the similarly situated requirement whether or not their claim is based on a suspect classification. *Id.* at 867–68 (quoting *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1045 (11th Cir. 2008)). "Under this requirement, a prisoner must demonstrate that he is similarly situated to other prisoners who received more favorable treatment. To be considered similarly situated, comparators must be *prima facie* identical in all relevant respects." *Id.* at 868 (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010)) (citation omitted). Discriminatory purpose requires that a decisionmaker took "a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiff's claim fails to satisfy either prong required to maintain an equal protection claim. Despite Plaintiff basing his claim on a suspect classification, his identity as Hispanic, Plaintiff fails to allege that similarly situated prisoners received more favorable treatment. Plaintiff's threadbare allegation that Defendant Goodling allowed "non-Hispanic detainees/prisoners to use the telephone" while denying Plaintiff its use, does not sufficiently allege that these other detainees or prisoners were similarly situated. [Doc. 24, ¶ 66]. Plaintiff did not allege any facts that demonstrate the discussed comparators are "*prima facie* identical in all relevant respects." *See Grider*, 618 F.3d at 1264. Plaintiff's basis for alleging unequal treatment is that he didn't get to use the phone, and others did. There are no facts that suggest they were other non-Hispanic

detainees who had been processed the night before. There are no facts suggesting that Defendant Goodling didn't allow *anyone* of Hispanic heritage to use the telephone. Plaintiff merely concluded that Defendant Goodling violated the Fourteenth Amendment because he was denied use of the telephone. The Court finds this allegation lacking.

Further, even if Plaintiff had shown other similarly situated individuals were granted access to the phone, his claim fails to show that Defendant Goodling invidiously discriminated against him. To show this, Plaintiff would have to allege facts sufficient to support a claim that Defendant Goodling denied him use of the telephone *because* Plaintiff is Hispanic. Plaintiff's threadbare allegation that "[Defendant Goodling] discriminated against Plaintiff . . . solely on the basis of Plaintiff being Hispanic" is the archetypal legal conclusion couched as a factual allegation that this Court cannot accept. *See Papasan*, 478 U.S. at 286. As such, Plaintiff's allegations are insufficient to support an equal protection claim against Defendant Goodling, and it is dismissed.

6. **Title II of the ADA and Section 504 of the RA Claims Against Defendants Talton, Howell, and Houston County**

In addition to his other federal claims, Plaintiff brings a claim under Title II of the ADA and Section 504 of the RA against Defendants Talton, Howell, and Houston County because his eyeglasses were taken from him. Plaintiff's Second Amended Complaint contains "Title II & III ADA and Section 504 [RA] claims against . . . Defendant Howell." [Doc. 24, ¶ 67]. However, in his Response Plaintiff asserted "I do

stipulate I do not meet the requirements for a Title III ADA claim." [Doc. 64, p. 6]. As such, the Court deems this claim abandoned and will only consider his remaining Title II ADA and Section 504 claims.

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA also provides "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [their] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Because of the similarities between the two statutes, courts rely on cases interpretating each statute interchangeably and the same standards govern cases under both. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

To successfully maintain a claim under either statute a plaintiff must show (1) that they are a qualified individual with a disability; (2) that they were excluded or denied benefits from a public entity's services, or was otherwise discriminated against; and (3) that the public entity's adverse action was because of their disability. *See Silberman*, 927 F.3d at 1134. According to the ADA, someone is disabled if "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an

22

impairment." 42 U.S.C. § 12102(1). Further, the ADA provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, *seeing*, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2) (emphasis added). Last, "the ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity." 42 U.S.C. § 12102(4)(E)(ii). According to the statutory definition of "disabled," the Court will assume, without determining, that Plaintiff is indeed "disabled" whenever he does not wear his glasses.

Despite his disability, Plaintiff's allegations under Title II of the ADA and Section 504 of the RA fail to state a claim. To survive Defendants' Motions to Dismiss, Plaintiff's Second Amended Complaint must allege enough facts to raise a reasonable expectation that discovery will reveal the latter two elements of his claims. *See Watts*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556). However, Plaintiff fails to plausibly allege that he was denied benefits from a public entity's service, or that he was otherwise discriminated against. Plaintiff asserted that Defendant Howell ordered him to turn in "all personal clothing and items, including [his] prescription eye-glasses because they were tinted." [Doc. 24, ¶ 72]. Plaintiff then claims that Defendants "failed to make reasonable accommodations for [him] even after [he] objected to the seizure of the glasses." [Doc. 24, ¶ 73]. These statements do not reveal that Defendant Howell

denied Plaintiff any services or discriminated against him. Plaintiff simply had to turn

over his glasses along with all of his other personal belongings as he was being

processed.

Even if the denial of his glasses for his less-than-24-hour detainment at the

HCDC constitutes a "denial of services," Plaintiff fails to allege any facts to suggest that

prison officials did so *because* he is disabled. Indeed, Plaintiff's own statements suggest

that the glasses were taken from him "because they were tinted" and *not* because he is

disabled. [Doc. 24, ¶ 72]. As such, Plaintiff's Second Amended Complaint fails to

include sufficient facts to survive dismissal. Consequently, Plaintiff's claims under Title

II of the ADA and Section 504 of the RA are dismissed.

### 7.  Section 1983 Conspiracy

In his Second Amended Complaint, Plaintiff claims a conspiracy existed amongst

the Defendants. "To state a claim for conspiracy under § 1983, a plaintiff must allege

that (1) the defendants reached an understanding or agreement that they would deny

the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual

denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792

F.3d 1313 (11th Cir. 2015). When evaluating whether a complaint survives a motion to

dismiss, a Court must "identify allegations that are 'no more than conclusions'" which

"are not entitled to the assumption of the truth." *McCullough v. Finley*, 907 F.3d 1324,

1333 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 681).

24

Plaintiff alleges that "Defendants Houston County, Sheriff Talton, and SCM . . . conspired to and did act in a manner designed to deny and deprive the Plaintiff of a claim and of equal protection and due process of law." [Doc. 24, ¶ 212]. Plaintiff also asserts that these Defendants "conspired to and did act in a manner designed to provide limited and substandard medical care for inmates and detainees at the HCDC in order to maximize their financial interests, bottom lines and profit margins or to limit their costs and expenses." [Doc. 24, ¶ 213].

Just as it did in its previous Order [Doc. 60], the Court finds that Plaintiff inadequately pleaded his conspiracy claim for two reasons. First, Plaintiff's allegations "are nothing more than legal conclusions dressed up in the guise of factual pleading." [Doc. 60, p. 17]. The court is not required to accept pleaded legal conclusions as true. And, it doesn't.

Second, Plaintiff fails to plead a valid claim that his constitutional rights were actually violated. Even if there had been an agreement amongst the Defendants, without a concrete constitutional injury, Plaintiff's conspiracy claim necessarily fails.

### 8.   Declaratory and Injunctive Relief

Last, Plaintiff brings a number of claims asking this Court for injunctive and declaratory relief. Plaintiff asks this Court to assign a Court-Ordered monitor "to monitor the County's medical triage and treatment practices of its pre-trial detainees and inmates and detainees to ensure" constitutional and statutory compliance. [Doc. 24,

¶ 238]. Plaintiff also asks the Court to declare Defendants Houston County, Talton, and Howell violated his Eighth and Fourteenth Amendment rights. [Doc. 24, ¶¶ 242, 244]. Finally, Defendant asks this Court to declare that Defendants Houston County, Talton, and Howell violated the ADA. [Doc. 24, ¶ 245].

The Court determined that these Defendants did not violate Plaintiff's rights under the Fourteenth Amendment, did not violate his rights under the ADA or RA, and that, as alleged, there is insufficient evidence to suggest widespread abuses at the HCDC to warrant § 1983 liability. Accordingly, the Court cannot enter the declaratory judgments Plaintiff requests. Additionally, because the Court has not found evidence of widespread abuses at the HCDC, the Court will not order the appointment of a Monitor to observe the medical facilities at the HCDC.

Most importantly, Plaintiff's requests for injunctive and declaratory relief fail because he is no longer in the custody of the HCSO. The Eleventh Circuit affirmed "as a general matter, that 'a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.'" *Daker v. Warren*, 660 F. App'x 737, 747 (11th Cir. 2016). According to Plaintiff, he was released on August 23, 2016. [Doc. 24, ¶ 87]. Consequently, for both of the above reasons, Plaintiff's claims for injunctive and declaratory relief are **DENIED as moot**.

## C.  Plaintiff's Remaining State Law Claims

"Federal courts are courts of limited jurisdiction" and only possess "that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs must include "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." FRCP 8(a)(1). Federal question jurisdiction is present in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court will have original jurisdiction over civil actions filed by plaintiffs seeking to redress any deprivation of a civil right afforded to them by the United States Constitution or federal law. *See* 28 U.S.C. § 1343. Federal courts will also have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different states." 28 U.S.C. § 1332. To satisfy their pleading requirements, plaintiffs must "allege the [parties] are citizens of different states and that the amount in controversy exceeds" the statutorily required amount. *See Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1418, n. 1 (11th Cir. 1997).

Just as the Court determined in its previous Order [Doc. 60], Plaintiff *only* identifies two sources of federal jurisdiction in his Second Amended Complaint: federal question jurisdiction pursuant to 28 U.S.C. § 1331 and civil rights jurisdiction pursuant to 28 U.S.C. § 1343. [Doc. 24, ¶ 23]. Just as last time, the Court has dismissed all of

Plaintiff's claims against certain defendants relating to a federal question, and the Court is left without another basis for federal jurisdiction.

Federal courts may exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). "District courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[S]tate courts, not federal courts, should be the final arbiters of state law," and when a federal court "has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. Sch. Bd. Of Miami-Dade Cnty.*, 167 F.App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). "[D]istrict courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Consistent with its decision in its previous Order, the Court declines to exercise supplementary jurisdiction over Plaintiff's remaining state law claims against these Defendants in accordance with the considerable discretion afforded the Court by 28 U.S.C. § 1367(c)(3). Consequently, all of the state law claims made against these Defendants are **DISMISSED without prejudice**. The Court would like to remind Plaintiff that should he wish to pursue these state law claims, he may do so in the appropriate forum in the State of Georgia.

## CONCLUSION

Based on the above discussion, the Court **GRANTS** the Motion to Dismiss filed by Defendants Houston County and Sheriff Talton [Doc. 44] and **GRANTS** the Motion to Dismiss filed by Defendants Goodling and Howell [Doc. 59]. As such, all federal and state law claims against these Defendants are **DISMISSED** and the Court terminates Defendants Houston County, Talton, Goodling, and Howell as parties in this case.[3]

**SO ORDERED**, this 24th day of January, 2022.

S/Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Plaintiff also brings an independent claim for spoliation against Defendants Houston County and Talton. It is not clear to the Court whether Plaintiff brings this claim pursuant to state or federal law. However, in accordance with the same reasoning outlined in its previous Order, the Court dismisses this claim against these Defendants as it is not a valid cause of action. *See* [Doc. 60, pp. 22–23].